IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 18-cv-01204-RBJ-MEH

MICHAEL SHANNON ESPINOZA,

    Plaintiff,

v.

RICK RAEMISCH,
ROBERT DICK,
ROLAND JACKSON,
JACKIE McCALL,
EVE LITTLE,
BRANDON SERLES,
MR. STITT, and
DENWALT,

    Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
---

**Michael E. Hegarty, United States Magistrate Judge.**

    This action arises out of the incarceration of Plaintiff Michael Shannon Espinoza ("Espinoza"), an inmate at the Sterling Correctional Facility (the "SCF"), the Colorado State Penitentiary ("CSP"), and Buena Vista Correctional Facility ("BVCF") at various relevant times. Espinoza proceeds in this action *pro se* and alleges three claims against the various Defendants: (1) violation of his Eighth Amendment right to be free from cruel and unusual punishment; (2) violation of his Eighth Amendment right against Defendants' deliberate indifference to his serious need for medical care; and (3) violation of his federal and state constitutional rights as well as violation of administrative regulations and state statutes due to Defendants' failure to protect him from harm while incarcerated. In response, Defendants filed a Motion to Dismiss pursuant to Fed. R. Civ. P.

12(b)(6) [filed September 4, 2018; ECF No. 26]. For the reasons that follow, this Court respectfully recommends that the Honorable R. Brooke Jackson grant in part and deny in part the Defendants' motion.

**BACKGROUND**

**I.      Statement of Facts**

The following are relevant factual allegations (as opposed to legal conclusions, bare assertions, or merely conclusory allegations) made by Espinoza in the operative Complaint, which are taken as true for analysis under Fed. R. Civ. P. 12(b)(6) pursuant to *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On or about February 28, 2017, Espinoza arrived at the SCF. He immediately informed staff that he was no longer a member of the Sureno gang, and that his life was in danger from Sureno gang members at SCF. During the intake process, Espinoza discussed his safety concerns with the intake officers, and those concerns were documented. He also completed a removal form and was ordered back to General Population Unit 4. After reaching Unit 4, Espinoza was approached and threatened by three Sureno gang members. Espinoza promptly notified the Unit 4 lieutenant of the threat, but his report was ignored; instead, he was ordered back to his cell and told to contact the day shift. That same night, Espinosa was attacked by the same three Sureno gang members who had threatened him earlier. A February 28, 2017 Incident Report form titled, "Incident #991320," reflects that Espinosa and three other offenders were "fighting in LU 4 A-Pod." Compl. Ex. B. After the fight, Plaintiff was removed from General Population and sequestered for fifteen days. *Id.*

On or about March 15, 2017, Espinoza was placed back in the General Population Unit. On April 14, 2017, Espinoza was attacked for a second time by two Sureno gang members. Espinoza

was again removed from General Population and sequestered. While sequestered, Espinoza spoke with Defendant Robert Dick and other unknown personnel of SCF. Case Manager Dick told Espinoza he had custody issues at all Level II facilities and would be moved to a private prison.

On April 21, 2017, Espinoza was placed back in General Population at SCF. On that same day, Espinoza was again approached and threatened by numerous Sureno gang members. Espinoza immediately informed Defendant Jackson that his safety was in jeopardy. Lieutenant Jackson sent Espinoza back to General Population and contacted the shift commander. Jackson also had Espinoza complete a second set of custody issue paperwork and then ordered him back to General Population. Espinoza refused to return to General Population and was placed in segregation for seventeen days; he was later approved for transfer to CSP, which Espinoza alleges is a "regressive transfer" approved by Defendant Raemisch.

Espinoza was transferred to CSP's Management Control Unit on May 8, 2017, because he had "verified custody issues at every level IV [facility] in the state." Compl. Ex G. On or about May 20, 2017, Espinoza was assaulted by two Sureno gang members. He was seen by CSP medical staff and given an ice pack. Espinoza was then released to Defendants Stitt and Serles who placed restraints on his "bloody" body and placed him in a regular transport van. According to the Complaint, Stitt and Serles also physically and verbally assaulted Espinoza and called him a crybaby. They also forgot to take his medical file, so they had to turn around and go back to the CSP facility, delaying his medical treatment. During the transport, Espinoza lost a significant amount of blood and started having seizures. He was placed in a neck brace and transported by ambulance to Canon City Hospital.

Following Espinoza's release from the hospital, he was returned to the Management Control

Unit at CSP. At some point, perhaps in July of 2017,[1] Espinoza was asked whether "he wants to progress to CCTU and he stated yes he wanted to." Compl. Ex. G. A "CCTU" is a Close Custody Transition Unit for inmates transitioning out of CSP. *See id.*

On November 15, 2017, Espinoza was granted a Protective Custody Hearing presided over by Defendants Little, Denwalt, McCall, and other members of the Protective Custody Review Board. Espinoza was denied placement in protective custody. Compl. Ex. C. Thereafter, he was placed in BVCF, a closed custody level IV facility, on November 28, 2017. Compl. Ex. Y.

## II. Procedural History

In the present motion, Defendants contend that (1) they are immune from suit to the extent they are sued for damages in their official capacities; (2) the individual Defendants are entitled to qualified immunity; (3) Espinoza fails to allege personal participation by Defendants Raemisch, Little, McCall, Denwalt, and Dick; and, (4) Espinoza fails to state plausible claims for relief against Defendants Serles, Stitt, and Jackson.

Espinoza responds that he, in fact, states plausible Eighth Amendment claims against the Defendants, which were clearly established in the law. Espinoza asserts that not only was the risk of substantial harm "serious" as required for a constitutional claim, but also the Defendants knew of the risk of harm to Espinoza, particularly after he reported threats and was attacked by Surenos gang members in General Population at SCF and CSP.

Although provided the opportunity to do so, Defendants did not file a reply in support of the motion.

---

[1] Exhibit G to the Complaint was signed by the Internal Classification Committee Chair on July 27, 2017, and by the Administrative Head on July 31, 2017, but the form is not clear as to the date of the meeting or review memorialized by the document.

4

**LEGAL STANDARDS**

I. **Dismissal under Fed. R. Civ. P. 12(b)(1)**

Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of subject matter jurisdiction." Fed. R. Civ. P. 12(b)(1). Dismissal under Rule 12(b)(1) is not a judgment on the merits of the plaintiff's case, but only a determination that the court lacks authority to adjudicate the matter. *See Castenada v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994) (recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction when specifically authorized to do so). A court lacking jurisdiction "must dismiss the cause *at any stage* of the proceeding in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974) (emphasis in original). A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971). The burden of establishing subject matter jurisdiction is on the party asserting jurisdiction. *See Basso*, 495 F.2d at 909. Accordingly, Espinoza in this case bears the burden of establishing that this Court has jurisdiction to hear his claims. Further, under a 12(b)(1) motion, "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (quoting *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995)). In such an instance, "a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion." *Id.*

II. **Dismissal Pursuant to Fed. R. Civ. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *Sutton v. Utah State Sch. For the Deaf & Blind*, 173 F.3d 1226, 1236

(10th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id. Twombly* requires a two-prong analysis. First, a court must identify "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusions, bare assertions, or merely conclusory. *Id.* at 679. Second, the Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id.* at 680.

Plausibility refers "to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008)). "The nature and specificity of the allegations required to state a plausible claim will vary based on context." *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). Thus, while the Rule 12(b)(6) standard does not require that a plaintiff establish a prima facie case in a complaint, the elements of each alleged cause of action may help to determine whether the plaintiff has set forth a plausible claim. *Khalik*, 671 F.3d at 1191.

However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint must provide "more than labels and conclusions" or merely "a formulaic recitation of the elements of a cause of action,"

so that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint has made an allegation, "but it has not shown that the pleader is entitled to relief." *Id.* (quotation marks and citation omitted).

## III. Treatment of a Pro Se Plaintiff's Complaint

Typically, a federal court must construe a *pro se* plaintiff's "pleadings liberally, applying a less stringent standard than is applicable to pleadings filed by lawyers." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (quotations and citations omitted). Here, Espinoza initiated this action and filed the operative Complaint while proceeding *pro se*. Counsel has since entered an appearance on behalf of Espinoza and filed a response to the present motion. In so doing, counsel presumably reviewed and considered the Complaint as filed. The Court finds that counsel has had ample opportunity to seek to amend the Complaint, if he deemed it necessary, but has not done so. Accordingly, the Court finds that counsel has adopted the Complaint as if filed by him and, thus, recommends that Judge Jackson conclude the liberal construction generally afforded pro se plaintiffs does not apply here. *See Toney v. GMAC Mortg. Corp.*, No. 06-CV-01912-MSK-CBS, 2008 WL 697367, at *1 (D. Colo. Mar. 12, 2008) ("although the Plaintiffs originally commenced this action pro se, the Court deems their counsel to have adopted the contents of the Amended Complaint in its entirety, and thus, the Court does not afford the Plaintiffs the liberal construction of the pleadings due to pro se litigants").

## ANALYSIS

**I.     Sovereign Immunity**

Espinoza sues all Defendants in both their official and individual capacities. Defendants argue they are absolutely immune from liability for monetary damages pursuant to the doctrine of sovereign immunity.

Claims against state officials in their official capacities are essentially claims against the state entity. *Ky. v. Graham*, 473 U.S. 159, 165 (1985) ("Official-capacity suits, in contrast, generally represent only another way of pleading an action against an entity of which an officer is an agent.") (citation and quotations omitted). It is well-established that "the Eleventh Amendment precludes a federal court from assessing damages against state officials sued in their official capacities because such suits are in essence suits against the state." *Hunt v. Bennett,* 17 F.3d 1263, 1267 (10th Cir. 1994). Absent an unmistakable waiver by a state of its Eleventh Amendment immunity, or an unmistakable abrogation of such immunity by Congress, the Eleventh Amendment provides absolute immunity from suit in federal courts for states and their agencies. *Blatchford v. Native Village of Noatak & Circle Village,* 501 U.S. 775, 785-86 (1991). Thus, an official-capacity lawsuit is appropriate only where the claims could be sustained against the entity in its own name. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978).

The Supreme Court has recognized an exception to the Eleventh Amendment for such actions where a plaintiff is seeking prospective enforcement of their federal rights. *See Ex parte Young,* 209 U.S. 123, 159-60 (1908). But *Young* makes it clear that this exception "may not be used to obtain a declaration that a state officer has violated a plaintiff's federal rights in the past" or as a means for seeking money damages. *Buchwald v. Univ. of New Mexico Sch. of Med.,* 159 F.3d 487, 495 (10th

Cir. 1998) (citations and quotations omitted).

In this case, Espinoza seeks monetary damages against Defendants. ECF No. 1 at 17-19. While Espinoza also asserts that "[t]he 11st Amendment does not forbid suing state officials . . . for injunctive/declaratory relief in their official capacit[ies]," he does not seek any such declaratory or injunctive relief, either in the "Request for Relief" section or the "Statement of Claims" sections of the Complaint. *See id.* Therefore, to the extent that Espinoza seeks monetary damages and other relief for past harms against Defendants in their official capacities, the Court finds it lacks jurisdiction under the Eleventh Amendment to hear such claims and recommends those claims be dismissed.

## II. Qualified Immunity

Defendants assert they are entitled to qualified immunity for claims against them in their individual capacities. Qualified immunity protects from litigation a public official whose possible violation of a plaintiff's civil rights was not clearly a violation at the time of the official's actions. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It is an entitlement not to stand trial or face the other burdens of litigation. *Ahmad v. Furlong,* 435 F.3d 1196, 1198 (10th Cir. 2006) (internal quotations and citations omitted). The privilege is immunity from suit rather than a mere defense to liability. *Id.* When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). "The plaintiff must demonstrate on the facts alleged both that the defendant violated his constitutional or statutory rights, and that the right was clearly established at the time of the alleged unlawful activity." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 818 (2009)).

The Supreme Court discarded a review process that required courts to examine these

questions sequentially, first considering whether a right had been violated, and then second - if the court concluded a right had been violated - whether that right was clearly established at the time of the alleged violation. *Pearson,* 555 U.S. at 232-35. *Pearson* instead afforded courts the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236; *see also Christensen v. Park City Mun. Corp.*, 554 F.3d 1271, 1277 (10th Cir. 2009).

Here, Defendants argue that Espinoza has failed to allege personal participation on behalf of certain Defendants. Personal participation is an essential allegation in a civil rights action. *See Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976). "To establish ... liability, a plaintiff is required to bring forth evidence that an individual defendant directly and personally participated in the purported constitutional violation." *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003), *cert. denied*, 543 U.S. 925 (2004), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 127 S. Ct. 910, 921 (2007)). There must be an affirmative link between the alleged constitutional violation and each defendant's participation, control or direction, or failure to supervise. *See Butler v. City of Norman,* 992 F.2d 1053, 1055 (10th Cir. 1993). The Tenth Circuit has noted that in a civil rights case asserting claims against individual government actors, "it is particularly important ... that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations" against an entire group of defendants. *Kan. Penn Gaming, LLC v. Collins,* 656 F.3d 1210, 1215 (10th Cir. 2011).

Defendants assert that Espinoza failed to sufficiently allege the personal participation of

10

Defendants Raemisch, Dick, Little, McCall, and Denwalt. In addition, Defendants contend that Espinoza fails to state plausible claims for relief against Serles, Stitt, and Jackson. The Court will address Defendants' arguments in its analysis of each claim.

    A.    <u>Eighth Amendment Failure to Protect Claim Against Dick, Jackson, and Raemisch</u>

A failure to protect claim under the Eighth Amendment requires a plaintiff to show an objective risk of harm due to prison conditions and a subjective indifference to his safety:

> To establish a cognizable Eighth Amendment claim for failure to protect [an inmate from harm by other inmates], the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component.

*Smith v. Cummings*, 445 F.3d 1254, 1258-59 (10th Cir. 2006) (quoting *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Negligence does not support the subjective component of an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 97 S. Ct. 285 (1976). To show deliberate indifference, it is insufficient to show that the officer "fail[ed] to alleviate a significant risk that he should have perceived but did not." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). The official must first know of the risk; "that is, they 'knew of ways to reduce the harm but knowingly or recklessly declined to act.'" *Wright v. Collison*, 651 F. App'x 745, 748 (10th Cir. 2016) (quoting *Howard v. Waide*, 534 F.3d 1227, 1239 (10th Cir. 2008)). "[T]o satisfy the objective prong, Plaintiff must demonstrate that the medical needs he avers the Federal Officers neglected are "sufficiently serious" to satisfy the objective element. *Ajaj v. United States*, 293 F. App'x 575, 578 (10th Cir. 2008) (citing *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir. 2006)).

At the outset, the Court notes that Espinoza repeatedly cites to "violations" of prison regulations in support of his claims. However, "[p]rison regulations are 'primarily designed to guide

11

correctional officials in the administration of a prison. [They are] not designed to confer rights on inmates.'" *Lomax v. Lander*, No. 13-CV-0707-WJM-KMT, 2014 WL 1584219, at *6 (D. Colo. Apr. 21, 2014) (quoting *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995)). "Thus, even if prison officials did not strictly follow the prison's internal regulations, such failure would not constitute a violation of Plaintiff's right to due process." *Id.*; *see also Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("[o]fficials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision"); *Gaines v. Stenseng*, 292 F.3d 1222, 1225 (10th Cir. 2002) ("[t]o the extent [plaintiff] seeks relief for alleged violations of state statutes and prison regulations, ... he has stated no cognizable claim under § 1983") (citations omitted); *Malik v. Kindt*, No. 95–6057, 1996 WL 41828, at *2 (10th Cir. Feb. 2, 1996) ("a failure to adhere to administrative regulations does not equate to a constitutional violation") (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)).

Aside from any alleged violations of prison regulations, Espinoza alleges for his first claim that he informed Defendant Dick (allegedly a case manager in the housing department) during his intake at SCF on February 28, 2017 that he had left the Sureno gang in 2016 and was afraid for his safety if placed into the General Population. Espinoza was provided and completed a "security threat group" ("STG") removal form but, then, he was ordered to be housed in a General Population unit. There, he was approached by three members of the Sureno gang and told he "could not live at SCF GP," so he reported this perceived threat to an unknown lieutenant on duty at Unit 4. He was ordered back to his cell and told to contact the day shift. Espinoza claims that evening he was attacked by the three Sureno gang members. He was removed from population and segregated for fifteen days, but then ordered to return to the General Population at SCF. A month later, on April

12

14, 2017, Espinoza was assaulted by two Sureno gang members, removed from population, and placed in segregation where he again spoke with Dick, who said "he had custody issues at all level IV facilities" and promised to move Espinoza to a private prison.

However, on April 21, 2017, Espinoza was placed back into the General Population in Unit 3 at SCF. That same day, Espinoza was approached by Sureno gang members and told he "could not live at SCF GP." Espinoza reported this threat to Defendant Jackson (a lieutenant in the housing department) who had Espinoza complete another STG removal form, then ordered Espinoza back to his General Population cell. Espinoza refused to go, so Jackson issued a disciplinary write-up and placed Espinoza in segregation for seventeen days after which Espinoza was transferred to the CSP Management Control Unit on May 8, 2017. Espinoza alleges that Defendant Raemisch executed the transfer order on April 1, 2017.

The Court finds these allegations, taken as true, sufficient to demonstrate a plausible failure to protect claim against Defendants Dick and Jackson. Defendants assert that Espinoza failed to allege personal participation by Dick, but they do not acknowledge factual allegations placing Dick at Espinoza's intake on February 28, 2017 at which time Espinoza claims he notified Dick of not only his decision to disengage from the Sureno gang, but also a fear for his life and safety. Compl. 7. Armed with this knowledge, and knowing that Espinoza completed forms seeking removal from General Population based on his fear, Dick allegedly placed Espinoza in General Population in which he was attacked the same day. Later, in mid-April, Espinoza was attacked again and placed in segregation where he spoke with Dick, who allegedly promised to transfer him to a private prison; however, Espinoza was placed back into the General Population in a different unit. These allegations, if true, show that Dick knew about a risk of serious harm by Sureno gang members in

13

SCF General Population, but plausibly failed to protect Espinoza by housing him in General Population.

Similarly, Espinoza alleges that, after he was placed back into General Population in Unit 3 following the mid-April attack, Sureno gang members threatened him again, and he reported the threat to Jackson. Jackson also had Espinoza complete the removal paperwork, then ordered Espinoza to return to General Population. When Espinoza refused, Jackson issued a disciplinary write-up (Compl. Exs. F, G) and placed Espinoza in segregation before he was transferred to CSP. Again, these allegations, if true, demonstrate that Jackson knew about the risk of serious harm by Sureno gang members in General Population, but ordered Espinoza to return there; once Espinoza refused, Jackson disciplined and segregated Espinoza before Espinoza was transferred to CSP at which he was again attacked. The Court recommends finding these allegations plausibly state Jackson's failure to protect Espinoza.

Espinoza also alleges his first claim for relief against Defendant Raemisch, Executive Director of the CDOC, who allegedly "approved and signed" Espinoza's May 2017 transfer to CSP. Compl. 5. Espinoza refers to Exhibit F attached to his Complaint in support of his allegations; however, Exhibit F is a grievance form completed by Espinoza on July 21, 2017, two months after the transfer, and it contains no information regarding or referring to Raemisch. In addition, Espinoza alleges Raemisch signed the transfer order on April 1, 2017 (Compl. 8) but, again, Espinoza was not transferred to CSP until May 2017. Even if Espinoza's allegations were not contradictory and were entitled to a presumption of truth, Raemisch's mere signature on a transfer order is insufficient to plausibly allege his personal participation in the failure to protect claim.

According to the Tenth Circuit, a plaintiff may succeed in a Section 1983 action against a

14

defendant-supervisor by demonstrating:

> (1) the defendant promulgated, created, implemented or possessed responsibility for the continued operation of a policy that (2) caused the complained of constitutional violation, and (3) acted with the state of mind required to establish the alleged constitutional deprivation.

*Dodds v. Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010). Here, Espinoza alleges Raemisch signed the transfer order "with full knowledge, malicious intent and callous disregard for all Plaintiff's security issues, risks, and documented victimizations were made known to [Raemisch] prior to him signing" the order. Compl. 8. However, unlike with respect to Dick and Jackson, Espinoza fails to allege how Raemisch was purportedly made aware of the security risks surrounding Espinoza's housing. Consequently, the Court finds Espinoza's conclusory allegation is insufficient to demonstrate Raemisch's state of mind required to establish an Eighth Amendment violation.

In sum, the Court respectfully recommends that Judge Jackson find Raemisch is entitled to qualified immunity and grant Defendants' motion as to Espinoza's first claim for relief against him. In addition, the Court recommends that Judge Jackson deny the motion with respect to the first claim against Dick and Jackson.

   B.  <u>Eighth Amendment Claim of Deliberate Indifference Against Stitt and Serles</u>

A prisoner's Eighth Amendment rights are violated when a prison official shows deliberate indifference to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must satisfy both objective and subjective components. *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006). "Under the objective inquiry, the alleged deprivation must be 'sufficiently serious' to constitute a deprivation of constitutional dimension." *Self*, 439 F.3d at 1230 (quoting *Farmer v.*

*Brennan*, 511 U.S. 825, 834 (1994)). "[A] medical need is considered 'sufficiently serious' if the condition 'has been diagnosed by a physician as mandating treatment or...is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (quoting *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999)). However, a "[d]elay in medical care only constitutes an Eighth Amendment violation where the plaintiff can show that the delay resulted in substantial harm." *Id.* (emphasis added) (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000)). "[U]nder the subjective inquiry, the prison official must have a 'sufficiently culpable state of mind.'" *Self*, 439 F.3d at 1230-31. That is, a plaintiff must prove the defendant disregarded a known substantial risk of harm by failing to take reasonable measures to abate it. *Callahan*, 471 F.3d at 1159. "The deliberate indifference standard poses 'a high evidentiary hurdle' 'akin to recklessness in the criminal law, where, to act recklessly, a person must consciously disregard a substantial risk of serious harm.'" *Heidtke v. Corrs. Corp. of Am.*, 489 F. App'x 275, 280 (10th Cir. 2012) (quoting *Self*, 439 F.3d 1227 at 1231).

Espinoza alleges that on May 20, 2017, he was attacked by two Sureno gang members at CSP a result of which he suffered injuries to his head and face. He was provided an ice pack by CSP's medical staff, then "released" to Defendants Stitt and Serles for transport to the hospital. *See* Compl. Ex. I. The Defendants placed Espinoza in restraints and into a van, while allegedly "physically and verbally assaulting" Espinoza, including calling him a "crybaby." According to Espinoza, the Defendants "forgot" his "medical file" and had to turn around to go back to CSP's main building; Espinoza asserts this caused an hour's delay, and he suffered a seizure from a substantial loss of blood while in the van. When the van returned to the facility, staff found Espinoza "sitting on the floor of the cage and [he] appeared to be confused and disoriented." *Id.* Ultimately, Espinoza was

16

placed in a "seizure controlled neck brace" and transported by ambulance to the hospital at which he received six stitches on his face and seven staples on his head.

Taking these allegations as true, the Court finds Espinoza states plausible deliberate indifference claims against Stitt and Serles. Defendants argue Espinoza fails to allege the subjective component of an Eighth Amendment claim, but I disagree. Espinoza asserts that his wounds required stitches and staples, he lost a substantial amount of blood, and the Defendants placed restraints on his "bloody body"; taken as true, these allegations demonstrate the Defendants' knowledge that Espinoza suffered "serious" injuries. Further, the Defendants' physical assaults and jeers directed at Espinoza, as well as the alleged one-hour delay between Espinoza's visit to the medical department and leaving in the transport van (Compl. Exs. H, I), if true, demonstrate deliberate indifference to Espinoza's serious medical needs. Moreover, to the extent Stitt and Serles were responsible for the delay in Espinoza receiving medical treatment for his head and face wounds, such delay allegedly resulted in substantial blood loss and seizure; the Court finds that, for purposes of an Eighth Amendment analysis, these allegations demonstrate "the delay resulted in substantial harm." *Sealock*, 218 F.3d at 1210.

Accordingly, this Court respectfully recommends that Judge Jackson deny the Defendants' motion to dismiss Espinoza's Eighth Amendment deliberate indifference claim against Defendants Stitt and Serles.

C. <u>Eighth Amendment Failure to Protect Claim Against Little, Denwalt, McCall, and Raemisch</u>

The standard for alleging a plausible failure-to-protect claim is set forth above but, again, "the plaintiff must show that he is incarcerated under conditions posing a substantial risk of serious

17

harm[,] the objective component, and that the prison official was deliberately indifferent to his safety, the subjective component." *Smith*, 445 F.3d at 1258-59. According to the Complaint, Defendants Little, Denwalt, and McCall were members of the Protective Custody Review Board, which denied his request for housing in protective custody. Specifically, the decision states: '[t]he Committee determined that Offender Michael Espinoza #143814 should not be placed in protective custody at this time due to the level of threat to his safety not meeting the criteria for PC placement." Compl. Ex. C. Espinoza alleges that, by coming to this conclusion, the committee members failed to protect him from substantial harm. The Court disagrees.

Aside from asserting violations of various prison regulations, Espinoza alleges that following the May 2017 attack, he was "moved to a CCTU [ ] at CSP designated for transition out of" the management control unit in which he was purportedly attacked. Compl. 5-6; *see also* Ex. G (Espinoza's progression to CCTU was approved July 31, 2017). Apparently while there, Espinoza was "granted a [protective custody] review" on November 15, 2017, and he was "subsequently sent to a closed custody level IV facility, BVCC . . . where Plaintiff's life would yet again be placed in peril." Compl. 6. Importantly, the Complaint contains no allegations of threats or any other conduct by Sureno gang members against Espinoza from the date of the attack in May 2017 through the date of the Committee's decision in November 2017. Further, an allegation that "Plaintiff's life would again be placed in peril" is merely speculative and, thus, not entitled to a presumption of truth. *See Iqbal*, 556 U.S. at 679. Consequently, the Complaint fails to allege the objective component that Espinoza "is incarcerated under conditions posing a substantial risk of serious harm" at the time of the Committee's decision. With no risk of harm present, Defendants Little, Denwalt, and McCall cannot be perceived to be deliberately indifferent to Espinoza's safety.

Espinoza also asserts that Raemisch violated the Eighth Amendment by signing the prison regulation under which the Committee purportedly made its decision. Compl. 13. However, "[p]ast input into the formulation of prison regulations ... is a connection far too attenuated to support liability under § 1983." *Grimsley v. MacKay*, 93 F.3d 676, 680 (10th Cir.1996).

Therefore, the Court respectfully recommends that Judge Jackson find Defendants Little, Denwalt, McCall, and Raemisch are entitled to qualified immunity for Espinoza's failure to allege a plausible Eighth Amendment claim and grant the Defendants' motion to dismiss Espinoza's third claim for relief.

## **CONCLUSION**

In sum, the Court finds the Court lacks subject matter jurisdiction over Espinoza's claims against the Defendants in their official capacities and recommends such claims be dismissed. As for Espinoza's claims against the Defendants in their individual capacities, the Court finds he plausibly states Eighth Amendment claims against Defendants Dick, Jackson, Stitt, and Serles, but not against Defendants Denwalt, Little, McCall, and Raemisch; accordingly, I recommend that Judge Jackson find the latter Defendants entitled to qualified immunity and grant the motion to dismiss the first (as to Raemisch) and third claims for relief, but deny the motion to dismiss the first (as to Dick and Jackson) and second claims for relief.

Therefore, the Court respectfully recommends that Defendants' Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) [filed September 4, 2018; ECF No. 26] be **granted in part and denied in part** as set forth herein.[1]

---

[1]Be advised that all parties shall have fourteen (14) days after service hereof to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. Fed. R. Civ. P. 72. The party filing objections must specifically identify those

19

Respectfully submitted this 2nd day of April, 2019, at Denver, Colorado.

BY THE COURT:

*Michael E. Hegarty*

Michael E. Hegarty
United States Magistrate Judge

---

findings or recommendations to which the objections are being made.  The District Court need not consider frivolous, conclusive or general objections.  A party's failure to file such written objections to proposed findings and recommendations contained in this report may bar the party from a de novo determination by the District Judge of the proposed findings and recommendations.  *United States v. Raddatz*, 447 U.S. 667, 676-83 (1980); 28 U.S.C. § 636(b)(1).  Additionally, the failure to file written objections to the proposed findings and recommendations within fourteen (14) days after being served with a copy may bar the aggrieved party from appealing the factual and legal findings of the Magistrate Judge that are accepted or adopted by the District Court.  *Duffield v. Jackson*, 545 F.3d 1234, 1237 (10th Cir. 2008) (quoting *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991)).