IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No 18-cv-01204-RBJ-MEH

MICHAEL SHANNON ESPINOZA

     Plaintiff,

v.

ROBERT DICK,
ROLAND JACKSON,
DUSTIN SERLES, and
DAVID STITT,

     Defendants.

---

ORDER ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

---

This action arises out of plaintiff's incarceration at various correctional facilities and the alleged Eighth Amendment violations related to his safety and medical care therein.[1] Before the Court is defendants' motion for summary judgment. ECF No. 75. For the reasons discussed below, defendants' motion is GRANTED.

## I. FACTUAL BACKGROUND

The following facts are undisputed and taken from the record before the Court. *See* ECF Nos. 75, 84. Plaintiff Michael Shannon Espinoza was an inmate in the Colorado Department of

---

[1] Two of the defendants are named in this case as "Brandon Serles" and "Mr. Stitt." *See* ECF No. 1. The evidence in the record, however, reveals that Mr. Serles' first name is actually "Dustin," and that Mr. Stitt's first name is "David." *See* Dustin Serles Deposition Trans. [ECF No. 75-14] and David Stitt Deposition Trans. [ECF No. 75-13]. The Court therefore refers to these defendants by their correct names in this order.

1

Corrections ("CDOC") at the time of these events. Defendants are all staff members of various CDOC facilities in which Mr. Espinoza was incarcerated. ECF No. 1.

Mr. Espinoza was incarcerated within the CDOC from November 8, 2013 to March 1, 2016. ECF No. 75-1 at 41, 55. During that time, plaintiff became a senior member of the Sureño gang.[2] ECF No. 75-3 at 82:6-11. On January 1, 2016, Mr. Espinoza informed other members of the Sureño gang that he was ending his membership in the gang. *Id.* at 49:18-22. He did not inform any CDOC officials of his decision at that time. *Id.* at 51:22-25. Mr. Espinoza was paroled from CDOC's custody in March of 2016. ECF No. 75-1 at 41. In the months before his parole he received verbal threats, but he did not suffer physical violence from the Sureño gang. ECF No. 75-3 at 51:11-21.

In October of 2016, Mr. Espinoza's parole was revoked, and he re-entered CDOC custody at the Denver Reception and Diagnostic Center on February 7, 2017. ECF Nos. 75-1 at 20–21; 75-4. During the intake process an intelligence officer asked Mr. Espinoza whether he had any enemies within the CDOC system. ECF No. 75-5 at 1. Mr. Espinoza reported none because at that time he did not know whether his safety was at risk from the Sureños. *Id.*; ECF No. 75-3 at 44:10–45:3. On February 8, 2017, Mr. Espinoza underwent a mental health appraisal in which he did not report any concerns for his safety or concerns relating to STG affiliation. ECF No. 76 at 10. Mr. Espinoza was transferred to Sterling Correctional Facility ("SCF") on February 28, 2017. ECF No. 75-3 at 47:15-18. That same day Mr. Espinoza met with the Internal Classification Committee ("ICC") to receive a housing assignment. ECF No.75-1 at 20. He told the ICC that he was a former Sureño gang member. He said he might have problems as

---

[2] CDOC also refers to gangs as Security Threat Groups ("STG").

a result, but that he was not sure his life was in danger. ECF Nos. 75-2 at 13:14-18; 75-3 at 56:23–57:7. The ICC assigned Mr. Espinoza to Living Unit 4, which is a close custody unit. ECF No. 75-1 at 20. Close custody units are more restricted and have higher security than medium custody units. ECF Nos. 75-6 at 34:3–35:7; 75-9 at 17:2-6

After arriving at Living Unit 4, Mr. Espinoza realized he was housed with numerous Sureños. On the day he arrived, February 28, 2017, three other inmates—two of whom were Sureños—verbally threatened him. ECF No. 75-3 at 130:13-21. Mr. Espinoza reported these threats to the Unit 4 lieutenant, but he was told to return to his cell and to contact the day shift about the issue. *Id.* at 118:14–120:6. Plaintiff then approached one of the Sureño gang members and hit him in the face. ECF No. 75-7 at 1. Mr. Espinoza testified that he started the altercation himself in front of correctional officers so it would be quickly broken up, and so he could avoid being beaten in the confines of his cell where he could easily be killed. ECF No. 75-3 at 123:19–125:10. As a result of this incident, Mr. Espinoza was convicted of assault under the Code of Prison Discipline and sentenced to fifteen days in restrictive housing. ECF No. 75-7 at 1.

On March 10, 2017, while in restrictive housing, Mr. Espinoza again met with the ICC. Defendant Case Manager Robert Dick was a member of that ICC. ECF No. 75-1 at 19. Mr. Espinoza told the committee that he had withdrawn from the Sureño gang in 2016, and that as a result his safety was at risk from Sureños at SCF. *Id.* The ICC proposed that Mr. Espinoza's custody rating be overridden from "close" to "medium" so that he could be transferred to Living Unit 2, a medium custody unit. *Id.* Mr. Dick stated that this step was taken to reduce the risk to plaintiff's safety. ECF No. 75-6 at 33:22–35:7.

Mr. Espinoza was reassigned to Living Unit 2 on March 15, 2017. ECF No. 75-1 at 19.

On April 14, 2017, as he was returning from his work assignment, Mr. Espinoza was physically assaulted in the southwest recreation yard by two Sureños housed in a different unit. ECF No. 75-3 at 74:10-20. Mr. Espinoza sustained bruises during this incident but did not require medical attention. ECF No. 77 at 15. He was then moved to restrictive housing pending an investigation. ECF No. 75-1 at 18. On April 17, 2017, Mr. Espinoza met again with the ICC, including defendant Dick. ECF No. 8. Mr. Dick gathered information from Mr. Espinoza so that he could file a verified custody issue on Mr. Espinoza's behalf. *Id.* The "Offender Custody Issue Verification" form that Mr. Dick completed stated, "the ICC recommends that Offender Espinoza be moved to an alternate Level III facility." *Id.* at 2. It thus ensured that Mr. Espinoza would not be housed with the offenders who assaulted him on April 14, 2017. The Associate Warden approved Mr. Espinoza's transfer to a different facility on April 20, 2017. ECF No. 8 at 2. Defendant Dick testified that he intended to reduce the risks to Mr. Espinoza's safety by initiating his transfer for a different facility. ECF No. 75-6 at 35:8-22.

On April 21, 2017, Mr. Espinoza was released from restrictive housing and assigned to Living Unit 3, back in General Population. ECF No. 75-1 at 18. Upon his release, Mr. Espinoza met with defendant Roland Jackson, who was the Living Unit 3 housing lieutenant, to report a custody issue. ECF No. 75-9 at 8:2-17. During that meeting Mr. Espinoza filled out a custody issue form indicating that he was in danger from other inmates in Living Units 3 and 4. ECF No. 75-10. Specifically, he wrote that when he arrived at Unit 3 he was told he "can't live here" and "will be stabbed," and he wrote that he "got jumped" in Unit 4. *Id.* On the form Mr. Espinoza did not provide names, physical descriptions, or CDOC numbers of the offenders who were threatening him, nor did he indicate that the perpetrators were Sureños. *Id.* Lt. Jackson testified

4

that he never received information that Mr. Espinoza claimed to be at risk of physical injury from the Sureños.  ECF No. 75-9 at 12:3-8.

Defendant Jackson attempted to verify the custody issue reported by Mr. Espinoza, as required by CDOC procedures.  Lt. Jackson testified that he reviewed security camera footage and interviewed staff members present in the unit, but that he was unable to substantiate Mr. Espinoza's claims.  ECF No. 75-9 at 27:17-28:13, 38:20-39:9.  He then ordered Mr. Espinoza back to his cell.  ECF No. 75-11 at 1.  Mr. Espinoza refused to return because he feared for his life.  He was removed from population and sentenced to restrictive housing.  *Id.*; ECF No. 75-12.

Mr. Espinoza's transfer to a different facility—the Colorado State Penitentiary's Management Control Unit ("MCU")—was approved on April 25, 2017.  ECF No. 75-12.  The "Close Custody Placement and Progression" form approving his transfer stated that Mr. Espinoza "has validated custody issues at every Level IV facility in the DOC.  The ICC is requesting that he be reviewed for placement in MCU."  *Id.*  Plaintiff was transferred to CSP's Management Control Unit on May 8, 2017 after his release from restrictive housing at SCF.  ECF No. 75-3 at 88:9-13.  The MCU is a close custody unit that limits physical interactions between inmates and only permits eight inmates to be outside their cells at a time.  Defendant Dick testified that he believed this limitation on inmate interaction in the MCU would give Mr. Espinoza the best chance at safety during his incarceration.  ECF No. 75-6 at 35:13–36:10.

Around 3:20pm on May 20, 2017 Mr. Espinoza pressed an emergency button located in his housing unit to declare a medical emergency, informing CSP staff that he had fallen and hit his head.  He had in fact been assaulted by two Sureño gang members assigned to the same unit, but he wanted to avoid increasing the threat to his safety by reporting the assault in earshot of the

5

offenders. ECF No. 75-3 at 91:7–92:2. Mr. Espinoza was taken to the infirmary and evaluated by CSP clinical staff. *Id.* at 93:14. He got six staples on the right side of his head and had abrasions along his right arm, collarbone, neck, ear, and head. ECF No. 77 at 19. Clinical staff determined that he should be transported to a hospital for further treatment. *Id.* at 22. Mr. Espinoza was placed in full restraints and loaded into a transport van by David Stitt and Dustin Serles. ECF No. 75-13 at 23:4-23. He recalls bleeding from his face and having blood all over himself. ECF No. 75-3 at 96:20-24, 137:7-14. Defendants Stitt and Serles then drove the transport van toward CSP's west gate en route to the hospital. Upon arriving at the security checkpoint, they discovered that they did not have Mr. Espinoza's medical records to provide to the hospital and had to return to CSP to collect them. ECF No.75-14 at 15:18–16:16. Mr. Espinoza recalled Stitt and Serles joking about forgetting the documents and Mr. Espinoza's medical state, and them saying "this idiot is going to fucking die." ECF No. 75-3 at 95:12–96:5.

Before the transport van reached CSP, Officers Stitt and Serles realized that Mr. Espinoza was not responsive and was experiencing a medical emergency. ECF No. 75-13 at 18:4-23. Mr. Espinoza suffered a seizure that lasted approximately one to two minutes. ECF No. 77 at 22. Defendants Stitt and Serles radioed for emergency medical responders who met the van as it returned to the facility. ECF No. 75-14 at 18:4-23. Mr. Espinoza was sent again to CSP's infirmary for evaluation, and then an ambulance was called and transported Mr. Espinoza to the hospital. *Id.* at 19:2-19. Later that evening he was discharged from the hospital and returned to CSP. ECF No. 77 at 27.

Mr. Espinoza filed a series of grievances related to the responses to his custody issues and medical emergency on May 20, 2017. He did so according to the grievance procedure

6

outlined in CDOC's Administrative Regulation ("AR") 850-04. *See* ECF No. 75-22. On June 7, 2017 he filed two separate Step 1 grievances about his custody issues—one regarding defendant Dick (R-CS16/1700112560-1) and one regarding defendant Jackson (R-CS16/1700112567-1). ECF Nos. 75-17, 75-20. On June 26, 2017 he received a response denying the Step 1 grievances against Mr. Dick and Lt. Jackson. *Id.* On June 9, 2017 he also filed a Step 1 grievance against defendants Stitt and Serles (R-CS16/1700112868-1) for their response to his medical care needs the day of the assault. ECF No. 75-23.

On July 7, 2017 Mr. Espinoza filed a Step 2 grievance regarding Lt. Jackson (R-CS16/1700112567-2). This grievance was untimely. ECF No. 75-26. On July 13, 2017 he filed a Step 2 grievance regarding Mr. Dick (R-CS16/1700112560-2), which was also untimely. ECF No. 75-18. On July 14, 2017 he received notice that his Step 1 grievance regarding defendants Stitt and Serles was denied. ECF No. 75-23. On July 20, 2017 Mr. Espinoza filed a Step 2 grievance regarding Stitt and Serles (R-CS16/1700112868-2). ECF No. 75-24.

On July 21, 2017, Mr. Espinoza was informed that his Step 2 grievances regarding Mr. Dick and Lt. Jackson were both denied. ECF Nos. 75-18, 75-26. Plaintiff followed up by filing a Step 3 grievance regarding Lt. Jackson (R-CS16/1700112567-3) on the same day and a Step 3 grievance regarding Mr. Dick (R-CS16/1700112560-3) on July 29, 2017. The latter was untimely. ECF Nos. 75-19, 75-21. Both were denied. *Id.* On August 24, 2017 Mr. Espinoza received notice that his Step 2 grievance regarding Officers Stitt and Serles was denied. ECF No. 75-24. That same day plaintiff filed a Step 3 grievance against Stitt and Serles (R-CS16/1700112868-3). That final grievance was also denied. ECF No. 75-25.

Mr. Espinoza applied for protective custody on August 30, 2017. ECF No. 75-1 at 14.

On November 17, 2017 his protective custody request was denied. *Id.* at 12. Mr. Espinoza was transferred from CSP to Buena Vista Correctional Facility on November 28, 2017. *Id.*

## II. PROCEDURAL BACKGROUND

Plaintiff filed this case pro se on May 16, 2018. ECF No. 1. He listed as defendants Rick Raemisch, Robert Dick, Roland Jackson, Jackie McCall, Eve Little, Dustin Serles (referred to as "Brandon Serles"), David Stitt, and Mr. "Denwait" (alternately referred to as "Denwalt" and "Dewalt"). *Id.* Plaintiff brought three claims: failure to protect under the Eighth Amendment; deliberate indifference to medical needs under the Eighth Amendment; and violation of his federal and state constitutional rights, administrative regulations, and state statutes based on defendants' failure to protect him from harm. *Id.* at 7–15.

On September 4th, 2018 defendants filed a motion to dismiss all claims. ECF No. 26. Magistrate Judge Michael E. Hegarty issued a recommendation that the Court grant the motion in part and deny it in part. ECF No. 44. The Court adopted Judge Hegarty's recommendation in full on May 1st, 2019. ECF No. 47. I dismissed all the claims against defendants in their official capacities for lack of subject matter jurisdiction, and I dismissed the claims against defendants Raemisch, McCall, Little, and Denwait in their individual capacities on qualified immunity grounds. *Id.* at 2. I permitted plaintiff's two remaining claims—failure to protect against defendants Dick and Jackson in their individual capacities, and deliberate indifference to medical needs against defendants Serles and Stitt in their individual capacities—to proceed. *Id.* After this Court's order, plaintiff secured counsel. The remaining defendants moved for summary judgment on the final two claims on August 24, 2020. ECF No. 75. Plaintiff responded on September 14, 2020. ECF No. 84. Defendants replied on October 13, 2020. ECF No. 87.

### III. STANDARD OF REVIEW

A court may grant summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party has the burden to show that there is an absence of evidence to support the nonmoving party's case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The nonmoving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324. A fact is material "if under the substantive law it is essential to the proper disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. The court will examine the factual record and make reasonable inferences in the light most favorable to the party opposing summary judgment. *See Concrete Works of Colo., Inc. v. City and Cty. of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994).

### IV. ANALYSIS

Defendants raise two arguments in their motion for summary judgment. The first is that they are entitled to qualified immunity, and the second is that plaintiff failed to exhaust his administrative remedies. ECF No. 75 at 17. I analyze the two claims based on each of these arguments. I address administrative exhaustion first because proper exhaustion of administrative procedures is a prerequisite to proceeding in a district court.

**A. Failure to protect claim against defendants Dick and Jackson**

Mr. Espinoza's first remaining claim is against defendants Dick and Jackson for deliberate indifference to his safety at SCF. He alleges that Mr. Dick and Lt. Jackson each knew

about the serious risk to his physical safety caused by Sureño gang members, and that both defendants failed to protect plaintiff by failing to keep him out of reach of Sureño gang members. ECF No. 1 at 7–9.

1. Administrative exhaustion

The Prison Litigation Reform Act of 1995 ("PLRA") has made clear that before suing over prison conditions, a prisoner must exhaust "such administrative remedies as are available." 42 U.S.C. § 1997e(a). Unexhausted claims cannot be considered by a court. *Thomas v. Parker*, 609 F.3d 1114, 1117 (10th Cir. 2010) (citing *Jones v. Bock*, 549 U.S. 199, 211 (2007)). This requirement of exhaustion "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). As the Supreme Court has explained,

> Exhaustion is no longer left to the discretion of the district court, but is mandatory. Prisoners must now exhaust all "available" remedies, not just those that meet federal standards. Indeed, . . . a prisoner must now exhaust administrative remedies even where the relief sought—monetary damages—cannot be granted by the administrative process. Finally, exhaustion of available administrative remedies is required for any suit challenging prison conditions, not just for suits under § 1983.

*Woodford v. Ngo*, 548 U.S. 81, 85 (2006). Exhaustion is required even if the administrative procedures "appear to be futile at providing the kind of remedy sought." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

"Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . ." *Woodford*, 548 U.S. at 90–91. "An inmate who begins the grievance process but does not complete it is barred from pursuing [a claim] for failure to exhaust his administrative remedies." *Jernigan*, 304 F.3d at 1032 (citing *Wright v. Hollingsworth*, 260 F.3d 357, 358 (5th Cir. 2001)). Similarly, a prisoner who does not file a grievance within the time

10

limit also fails to exhaust his administrative remedies. *Id.* at 1033. However, an inmate may overcome a failure to exhaust with evidence that demonstrates that the administrative remedy was not "available" to the inmate. *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010); *Tuckel v. Grover*, 660 F.3d 1249, 1252–53 (10th Cir. 2011).

The exhaustion doctrine is an affirmative defense. *Jones*, 549 U.S. at 211–12. As a result, defendants bear the burden of asserting and proving failure to exhaust. *See Tuckel*, 660 F.3d at 1254. The defendant raising an affirmative defense in a motion for summary judgment "must demonstrate that no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson v. Pfeil*, 105 F.3d 562, 564 (10th Cir. 1997) (citations omitted).

Defendants rely on a signed declaration by Mr. Tony DeCesaro, a CDOC Grievance Officer, to argue that plaintiff failed to exhaust administrative remedies with respect to his failure to protect claim. ECF No. 75 at 18.[3] In his declaration DeCesaro writes that "inmates are required to first attempt to resolve *any issue or complaint* they have by" using the grievance procedure set forth in AR 850-04. ECF No. 75-16 at ¶¶5–6 (emphasis added). But the regulation itself contradicts this statement. It states on page four that "[t]his grievance procedure **may not** be used to seek review of the following . . ." and, it then lists various inmate complaints or issues that are excluded from the grievance process. ECF No. 75-22 at 4. Among the exclusions are classification, which is "entirely at the discretion of the administrative head and internal classification committee of each facility," and "[f]acility placement, unit, cell and bunk

---

[3] Plaintiff objects to the Court's consideration of this declaration because it was not disclosed until defendants filed it alongside their motion for summary judgment, and plaintiff's counsel has not had the opportunity to question Mr. Decesaro. ECF No. 84 at 8. However, as defendants point out, they disclosed Mr. Anthony Decesaro as a potential witness in initial disclosures served on plaintiff on July 3, 2019. ECF No. 87 at 6. Their motion was filed on August 24, 2020. Plaintiff had ample time and opportunity to depose Mr. Decesaro if he wished to do so, and there is no rule requiring disclosure of the declaration itself in discovery. The Court therefore properly considers it.

assignment (including protective custody . . . )." *Id.*

The allegations against defendants Dick and Jackson in plaintiff's grievance forms fall within these non-grievable exclusions. Mr. Espinoza contends in both sets of grievances that he informed both defendants of his safety issues, and that they did not change his unit or facility assignments or address his concerns. ECF Nos. 75-17, 75-18, 75-19, 75-20, 75-21, 75-26. The facility responses themselves note that the issues for which Mr. Espinoza sought relief fell outside the AR 850-04 process. *See* ECF Nos. 75-17 ("Classification is not grievable."); 75-18 ("A/R 850-04 states that the grievance procedure may not be used to seek review of classification."); 75-19 at 2 ("The subject of your grievance is not an issue which the grievance process was designed to address."); 75-20 ("The grievance is deemed non-grievable per AR 850-4."); 75-21 at 2 ("The subject of your grievance is not an issue which the grievance process was designed to address."). Nor did any of the responses indicate what alternative procedure Mr. Espinoza should use to contest his classification, custody status, or living unit. *Id.*

To win on this affirmative defense, defendants Dick and Jackson must show that "no disputed material fact exists regarding the affirmative defense asserted." *Hutchinson*, 105 F.3d at 564. Defendants have not met that burden. The single administrative procedure they point to is inapplicable to the issue that Mr. Espinoza attempted to grieve, and they have put no other administrative regulations into the record to prove that there was some alternative process Mr. Espinoza was required to, but failed to, exhaust. *See* ECF No. 75. As a result, I cannot conclude that plaintiff failed to exhaust administrative remedies as to the claim against defendants Dick and Jackson. To grant summary judgment on this ground would be improper.

    2. <u>Qualified immunity</u>

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). When a defendant asserts the defense of qualified immunity, the burden shifts to the plaintiff to overcome the asserted immunity. *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). To avoid application of qualified immunity, a plaintiff must (1) show a violation of a constitutional right, and (2) show that the constitutional right was clearly established at the time it was allegedly violated. *Pearson*, 555 U.S. at 232; *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). A reviewing court has discretion to address either prong first. *Pearson*, 555 U.S. at 236.

Plaintiff's claim against defendants Dick and Jackson is for failure to protect under the Eighth Amendment. Mr. Espinoza must show an objective risk of harm due to prison conditions and a subjective indifference to his safety. *Smith v. Cummings*, 445 F.3d 1254, 1258 (10th Cir. 2006) (citing *Verdecia v. Adams*, 327 F.3d 1171, 1175 (10th Cir. 2003)). Negligence does not support the subjective component. *Estelle v. Gamble*, 429 U.S. 97, 104–06 (1976). Nor is it sufficient under deliberate indifference to show that the official "fail[ed] to alleviate a significant risk that he should have perceived but did not." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837. "An official responds to a known risk in an objectively unreasonable manner if he knew of ways to reduce the harm but knowingly [or] recklessly declined to act." *Howard v.*

13

*Waide*, 534 F.3d 1227, 1239–40 (10th Cir. 2008) (quoting *Rodriguez v. Sec'y for Dep't of Corr.*, 508 F.3d 611, 620 (11th Cir. 2007)). "In determining whether prison officials acted reasonably, we consider what actions they took, if any, as well as available alternatives that might have been known to them." *Id.* at 1240.

Plaintiff has failed to demonstrate a genuine dispute of material fact with respect to a constitutional violation by Mr. Dick. The risk to Mr. Espinoza's safety by the Sureños was sufficiently serious—plaintiff reported multiple physical assaults, and ultimately death threats, from the gang. Defendant Dick also knew of this risk. However, he only learned of an objective risk to Mr. Espinoza's safety on March 10, 2017 when plaintiff attended a meeting with the ICC of which Mr. Dick was a part, and thus he could only have been expected to respond after that date. That ICC meeting came on the heels of the first altercation between plaintiff and Sureños on February 28, 2017. Though Mr. Espinoza had mentioned his involvement with the Sureño gang when he first arrived at SCF in early February, he was equivocal about whether they caused him problems. His statements were insufficient to put any SCF official on notice of a known "significant" or "excessive" risk. *Farmer*, 511 U.S. at 837–38. Furthermore, even if his statements prior to February 28 had been sufficient, nothing in the record suggests that defendant Dick knew about those statements. Mr. Dick thus knew of an objective risk on March 10, 2017.

Though plaintiff has shown he faced an objective risk to his safety, he cannot show that defendant Dick was subjectively indifferent to that risk. At the same March 10 meeting where he first learned of the Sureños' assault and threats, Mr. Dick (as part of the ICC) immediately overrode plaintiff's classification from "close" to "medium" so that plaintiff could be moved to a different unit away from the gang members involved in the February 28 fight. A month later, on

14

April 14, 2017, Mr. Espinoza was assaulted again by Sureños. Defendant Dick responded to this incident by meeting with plaintiff on April 17 as part of the ICC team. Mr. Dick completed an "Offender Custody Issue Verification" form to prevent Mr. Espinoza from being housed with his assaulters, and he also advocated for Mr. Espinoza be transferred to the Management Control Unit of a different facility, the Colorado State Penitentiary.

Neither of defendant Dick's responses to the two assaults was objectively unreasonable. In both situations he took immediate or near-immediate action and recommended that Mr. Espinoza be moved to a different unit, and then a different facility, for his safety. Courts have found that officials acted reasonably in similar cases where a prisoner was at risk of harm from other inmates and the official rehoused or transferred the victim in response. *E.g.*, *Allen v. Zavaras*, 430 F. App'x 709, 712 (10th Cir. 2011) (unpublished) (finding prison official responses reasonable when unit manager moved plaintiff to a different unit after an in-cell assault, and when kitchen manager moved assailant to different kitchen department after a second assault); *Smith*, 445 F.3d at 1258–59 (affirming summary judgment for defendants where prison officials transferred plaintiff the day after he filed a grievance regarding concerns for his safety).

Meanwhile, the facts here are distinguishable from cases such as *Howard v. Waide*, in which the Tenth Circuit denied qualified immunity on a failure to protect claim. There an inmate was consistently targeted and assaulted by members of the 2-11 gang. *Howard*, 534 F.3d at 1230–33. The Tenth Circuit denied summary judgment to defendants because it found that they failed to consider all reasonable means of protecting the plaintiff—instead of moving him to a more restrictive housing unit or transferring him to a different facility, as the plaintiff had repeatedly requested, the defendants did "absolutely nothing." *Id.* at 1240–41. By contrast, here

15

defendant Dick responded swiftly to Mr. Espinoza's safety concerns by moving him.

Plaintiff has also failed to prove a genuine dispute of material fact regarding his failure to protect claim against defendant Jackson.  While the record shows that Mr. Espinoza faced an objectively serious risk to his safety from Sureño gang members, it does not show that Lt. Jackson knew or should have known of this risk.  Lt. Jackson did not attend the ICC meetings in which plaintiff explicitly noted his issues with the Sureños.  Instead, the only opportunity for Jackson to learn about any risk to plaintiff's safety was when plaintiff filed a custody issue statement indicating he was in danger from other inmates in Living Units 3 and 4.  But Mr. Espinoza did not mentioned the Sureños on the form, nor did he provide any identifying information about those threatening him such as names, physical descriptions, or DOC numbers.  All he provided was a broad, vague statement that he could not live in his current unit.

Lt. Jackson attempted to verify Mr. Espinoza's concerns by interviewing staff and reviewing video footage.  He was unable to substantiate his claim, and for that reason Lt. Jackson directed plaintiff to return to his cell in Living Unit 3.  Plaintiff's claim for deliberate indifference fails because Jackson did not have enough information from Mr. Espinoza or others to know of a significant or excessive risk to Mr. Espinoza's safety.  When reversing the district court in *Howard*, the Tenth Circuit emphasized that circumstantial evidence would allow inferences to be drawn in the plaintiff's favor regarding his safety risk even though the plaintiff refused to identify the gang members who threatened and assaulted him.  *Howard*, 534 F.3d at 1241.  But the court also highlighted the narrowness of its holding:

> If a prisoner faces a threat from a specific individual or individuals, it may well be impossible for prison officials to respond without knowledge of their identities. Likewise, if a prisoner's refusal to "name names" leaves prison officials without knowledge that the prisoner is actually in danger, *Farmer*'s actual knowledge prong

16

> would not be satisfied. [Plaintiff's] claim survives because he has presented evidence, both direct and circumstantial, that prison officials knew he faced an ongoing risk from a prison gang with a substantial presence in the facility, and that they had reasonable responses available to them.

*Id.* at 1242. The situation here is exactly the type anticipated by the Tenth Circuit outside *Howard*'s narrow holding. There is no evidence in the record to suggest Lt. Jackson ever knew about the risk the Sureños posed to Mr. Espinoza, nor that he had sufficient facts from which to infer such a risk from the minimal information provided by Mr. Espinoza.

Plaintiff has not met his burden of showing that either defendant Dick or defendant Jackson violated his constitutional rights under the Eighth Amendment. As a result, the Court need not reach the second prong of the qualified immunity analysis. *Pearson*, 555 U.S. at 236. The Court finds that defendants Dick and Jackson are entitled to qualified immunity on Mr. Espinoza's failure to protect claim. The Court thus grants summary judgment in their favor.

### B. Deliberate indifference to medical needs claim against defendants Serles and Stitt

Mr. Espinoza's second claim is for deliberate indifference to medical needs. He alleges that Officers Stitt and Serles were deliberately indifferent to his medical concerns following his May 20, 2017 assault when they delayed his transport to the hospital by forgetting his medical records and jeered at him before and during the transport. ECF No. 1 at 10–11.

1. Administrative exhaustion

As discussed above, a prisoner must exhaust administrative remedies before litigating his claims in court. 42 U.S.C. § 1997e(a). The CDOC grievance procedure at issue here, AR 850-04, applies to this claim. *See* ECF No. 75-22 at 4 ("1. Offenders will be entitled to invoke this grievance procedure for a broad range of complaints including . . . ***for resolving offender issues***

17

*relating to health care concerns* . . . ."). AR 850-04 provides a four-step process for inmate grievances. An inmate should first attempt to resolve the complaint informally through "discussion or dialogue" with the employee or case manager. *Id.* at 2. If that is unsuccessful, the inmate must file a series of grievances. An inmate must file a Step 1 grievance within thirty days of when he knew, or should have known, of the underlying facts regarding the issue. *Id.* at 7. If unsatisfied with the result, the inmate must file a Step 2 grievance within five days of receiving the written response. *Id.* If unsatisfied with the result of Step 2, the inmate must file a Step 3 grievance within five days of receiving that next written response. *Id.*

Mr. Espinoza attempted to informally resolve his issue with Stitt and Serles' response to his medical needs. ECF No. 75-23. When he did not hear back, he properly filed a Step 1 grievance form. He received a response denying his grievance on July 14, 2017. However, he was required under the administrative regulation to file his Step 2 grievance within five days, i.e. by July 19, and he did not file it until July 20, 2017. His second grievance form was thus untimely. Exhaustion requirements under the PLRA are strict. To properly exhaust his administrative remedies, Mr. Espinoza needed to comply with all procedural timelines and deadlines. *Woodford*, 548 U.S. at 90. Unfortunately, he did not do so. He thus failed to exhaust administrative remedies on his deliberate indifference claim against defendants Stitt and Serles.

"[A] dismissal based on lack of exhaustion should ordinarily be *without* prejudice." *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1139 (10th Cir. 2005). This permits the prisoner-plaintiff to cure the defect in their case if "the time permitted for pursuing administrative remedies has not expired." *Id.* (quoting *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1213 (10th Cir. 2003), *abrogated on other grounds by Jones*, 549 U.S. 199). But

here, the time for filing a grievance on this claim has unquestionably expired, and allowing Mr. Espinoza another opportunity to demonstrate exhaustion would be futile.  *See, e.g.*, *Thompson v. Coulter*, 680 F. App'x 707, 712 (10th Cir. 2017) (unpublished) (affirming dismissal with prejudice on exhaustion grounds due to futility); *Fitzgerald*, 403 F.3d at 1140 (noting that claims dismissed on exhaustion, for which administrative procedures are time barred, must fail).  The Court therefore dismisses plaintiff's claim against defendants Stitt and Serles with prejudice.

    2. <u>Qualified immunity</u>

Defendants Stitt and Serles also argue that they are entitled to qualified immunity. Because I have already dismissed this claim based on plaintiff's failure to exhaust administrative remedies, however, I do not reach this argument.

## ORDER

The Court GRANTS defendants' motion for summary judgment [ECF No. 75]. Plaintiff's claims are dismissed with prejudice.  Defendants are awarded their reasonable costs to be taxed by the Clerk pursuant to Fed. R. Civ. P. 54(d)(1) and D.C.COLO.LCivR 54.1.

DATED this 19th day of March, 2021.

BY THE COURT:

_____
R. Brooke Jackson
United States District Judge